UTAH SHARED ACCESS ALLIANCE, Plaintiff,

v.

Glenn CARPENTER, in his capacity as manager of the Salt Lake Field Office of the Bureau of Land Management, Maggie Wyatt, in her capacity as manager of the Moab Field office of the Bureau of Land Management, Sherwin Sandberg, in his capacity as manager of the Monticello Field Office of the Bureau of Land Management; Jerry Meredith, in his capacity manager of the Richfield Field Office; Sally Wisely, in her capacity as Utah State Director of the Bureau of Land Management, Gale A. Norton, in her capacity as Secretary of the Department of Interior, Kathleen Clarke, in her capacity as director of the Bureau of Land Management, and Bureau of Land Management, Defendants,

Southern Utah Wilderness Alliance, The Wilderness Society, Great Old Broads for Wilderness, and Wildlands CPR., Defendants-Intervenors.

No. CIV. 2:01–CV–00804J.

United States District Court,
D. Utah,
Central Division.

Dec. 9, 2004.

Paul W. Mortensen Email, Centerville, UT, for Plaintiff.

Carlie Christensen, Jeffrey E. Nelson, US Attorney's Office, Salt Lake City, UT, Keith G. Bauerle, Eric Biber, Denver, CO, Heidi J. McIntosh, Stephen H. Bloch, Southern Utah Wilderness Alliance, Salt Lake City, UT, for Defendants.

## MEMORANDUM OPINION & ORDER RE: SUPPLEMENTAL COMPLAINT CHALLENGING‘ THE APRIL 24, 2003 BOX ELDER COUNTY ORDER

JENKINS, Senior District Judge.

In a Memorandum Opinion and Order ("Order") dated August 28, 2003, the Court dismissed all of the causes of action of Plaintiff Utah Shared Access Alliance ("USA–All")'s First Amended Complaint against defendants Glenn Carpenter, et al. (collectively "Defendants"). (*See* Order, dated August 28, 2003 (dkt. no. 118).) The case remained open pending the Court's ruling on the claims set forth in USA–All's Supplemental Complaint Regarding New Box Elder County Restrictions, for which USA–All seeks declaratory and injunctive relief requiring Defendants to acknowledge and to adhere to controlling law and BLM's governing land management plan while managing motorized access to public lands in Box Elder County, Utah. Specifically, USA–All challenges Defendants' April 24, 2003 action restricting land in Box Elder County. USA–All alleges that Defendants have arbitrarily and capriciously abused their emergency authority; violated the directions of their governing land management plan; unlawfully amended its land use plan to close access roads without utilizing legally-required procedures, public participation and environmental analysis; and violated specific congressional restrictions in the National Defense Authorization Act for fiscal year 2000.

This action arises under the Federal Land Policy and Management Act, 43 U.S.C. § 1701, *et. seq.* (2000) ("FLPMA"); the National Environmental Policy Act, 42 U.S.C. § 4331, *et. seq.* (2000) ("NEPA"); the National Defense Authorization Act for Fiscal Year 2000, Pub.L. No. 106–65

("NDAA"); and, where applicable, implementing regulations, all made reviewable through the Administrative Procedure Act, 5 U.S.C. § 701 *et. seq.* (2000) (the "APA"). 5 U.S.C. §§ 702, 704, 706(2).

Having fully considered the arguments of counsel, the submissions of counsel, and the applicable legal authority, the court now enters the following memorandum opinion and order.

## FACTUAL HISTORY

The Box Elder Resource Management Plan ("RMP") was completed in 1986. Under the RMP, 999,634 acres were designated as open to off-highway vehicle ("OHV") travel; 11,180 acres were limited to existing routes; and 980 acres were limited to designated routes.

On January 14, 1998, BLM completed a plan amendment that addressed the management of certain lands that BLM acquired after the RMP was completed. On April 27, 1999, BLM published a "Notice of Closure of Public Lands" closing selected public lands in Box Elder County to OHV travel from January 1 to April 30 of each year. On March 28, 2000, BLM published a "Notice of Closure of Public Lands" closing certain lands in western Box Elder County to address concerns related to unrestricted cross-country OHV travel in places where resource damage had occurred. On April 24, 2003, BLM issued a "Notice of Limitations of Off Road Vehicles (ORV) Use on Public Lands" with respect to certain defined lands in Box Elder County. 68 Fed.Reg. 20,167 (2003) ("New Order"). The New Order which revoked the two prior notices described above restricted OHV use to designated routes in five described areas in Box Elder County.

USA–All claims that by the New Order, Defendants have restricted use of over 180,000 acres of BLM land in the Pilot Mountains, Grouse Creek Mountains, Devils Playground, Hogup Mountains and Wildcat Hills; that Defendants' restrictions have eliminated open travel in these areas. BLM has closed more than half of the existing roads in these areas. USA–All asserts that their members have in the past traveled in or on areas and roads now so restricted; that USA–All members are restricted in pulling off the road to establish camping sites; and that USA–All members have immediate intentions to travel on existing roads and trails, as well as off-road in restricted areas, but they are afraid of incurring criminal sanctions, being stigmatized, and/or suffering additional access restrictions if they violate the restrictions. USA–All and its members assert that they have been denied the opportunity to participate in motorized access management planning.

Defendants argue that the BLM properly exercised its authority in issuing the New Order; that the New Order is supported by ample evidence in the administrative record; and that the BLM's issuance of the New Order does not create a "de facto amendment" of the RMP. Specifically, the BLM's Salt Lake Field Office documented evidence of proliferation of new OHV routes, damage and destruction of vegetation, increased soil erosion, and a likelihood of damage to cultural resources; for these reasons, BLM was required by applicable regulations to close the affected areas until the adverse affects of OHV travel are eliminated. They also contend that USA–All lacks standing to complain of alleged violations of the NDAA, but in any event the BLM's issuance of the New Order did not violate the NDAA.

## ISSUES ON APPEAL

1. Does USA–All have standing to challenge any alleged violations by the BLM of the National Defense Authorization Act of 2000? If so, does the New Order violate the National Defense Authorization Act of 2000?

2. Is the New Order unsupported by substantial evidence or otherwise arbitrary and capricious?

3. Does the New Order violate the planning requirements of the Federal Land Policy and Management Act?

4. Does the New Order violate the National Environmental Policy Act.

## STANDARD OF REVIEW

 USA–All alleges that the New Order violates FLPMA's land use planning requirements, the environmental analysis requirements of the NEPA and the NDAA. Because none of these statutes includes a citizen's suit provision, judicial review is governed by the APA, 5 U.S.C. §§ 701 *et seq.* Judicial review under the APA is limited to the administrative record and is narrow in scope. The APA provides that, "[t]he reviewing court shall ... hold unlawful and set aside agency action, findings, and conclusions found to be ... arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *see also Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1574 (10th Cir.1994), that is, "whether [BLM] examined the relevant data and articulated a rational connection between the facts found and the decision made." *Id.* Agency action is arbitrary and capricious if the decision runs counter to the evidence before the agency or if it is not supported by substantial evidence in the record. *See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983).

## DISCUSSION

### I. USA–All Lacks Standing to Challenge the New Order Under the National Defense Authorization Act of 2000.

 Defendants and defendant-intervenors dispute that USA–All has standing to challenge the New Order under NDAA.

USA–All claims that there has been a violation of Section 2815 of the NDAA, which prevents BLM from amending its RMPs for some of the areas covered by the New Order until the Secretary of Defense studies the impacts that those amendments would have on military readiness. NDAA § 2815. Specifically, USA–All argues that the New Order stripped out interior roads in at least 2 or 3 areas resulting in immense areas that now qualify as 5,000–acre de facto wilderness areas condemned by the NDAA. (*See* Transcript of Hearing, dated July 16, 2004 ("Tr."), at. 16.)

 For an APA claim such as this, standing includes the "prudential" requirement that "the plaintiff's complaint must fall within the zone of interest to be protected or regulated by the statute or constitutional guarantee in question." *Mount Evans Co. v. Madigan*, 14 F.3d 1444, 1451 (10th Cir.1994). A plaintiff must establish that its injury "falls within the 'zone of interests' sought to be protected by the statutory provision whose violation forms the legal basis of the complaint." *Id.* at 1452 (citations omitted); *see also Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 883, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). As to § 2815, the NDAA's purpose is to ensure that BLM land-use planning does not vitiate military readiness. NDAA § 2815(a). USA–All's purported injury- the imposition of limits on the ability of its members to ride their machines across the public lands-hardly falls into this zone of interest. USA–All lacks prudential standing to pursue a NDAA claim. Accordingly USA–All's ADA claim based on the NDAA claim must be dismissed.

### II. The New Order does not violate either the Federal Land Policy and Management Act or the National Environmental Policy Act.

 BLM regulations provide that if the BLM determines that ORVs "are caus-

ing or *will cause* considerable adverse effects" to natural resources, other authorized uses, or other resources, the BLM "*shall* close the area affected to the type(s) of vehicle causing the adverse effect." 43 C.F.R. § 8341.2(a) (2003) (*emphasis added*). Thus, the regulations do not require evidence of existing adverse effects before use restrictions can be imposed. Under § 8341.2(a), the BLM's role in minimizing user conflicts and damage to natural resources is not strictly reactive. *Northwest Motorcycle Ass'n v. United States Dep't. of Agric.*, 18 F.3d 1468, 1476–77 (9th Cir. 1994).

■■■ In addition, NEPA sets forth a set of action-forcing procedures that require that agencies take a "hard look" at environmental consequences. *See Friends of the Bow v. Thompson,* 124 F.3d 1210, 1213 (10th Cir.1997). Under NEPA, a federal court must determine whether the agency took the required "hard look" at potential environmental consequences of its decision.

■■■ USA–All argues that the New Order is inconsistent with the RMP and that it violates NEPA and the FLPMA requirements for public participation and environmental analysis, as well as the FLPMA standards for consistency. USA–All argues that the court must either reject BLM's interpretation or strike the federal regulations down.[1] (*See* Tr.17.)

USA–All is mistaken in asserting that the OHV regulation violates the NEPA and FLPMA public participation, environmental analysis and consistency requirements. As this Court stated in its previous Order, the amendment of an RMP is a different process from the issue of a closure order under the OHV regulations. The amendment or revision of an RMP is a

lengthy process that requires a number of steps, including scoping, publication of an environmental impact statement, and public comment. *See generally* 43 C.F.R. Part 1600. BLM's authority to close areas to OHV use, is separate from the plan amendment process and does not require compliance with the amendment procedures. (Order, at 19.)

The plain meaning of the provision supports this distinction:

> *Notwithstanding the consultation provisions* of § 8342.2(a), where the authorized officer determines that off-road vehicles are causing or will cause considerable adverse effects... the authorized officer shall immediately close the areas or trails affected.... Such closures will not prevent designation..., but these shall not be opened to the type(s) of off-road vehicle to which it was closed unless the authorized officer determines that the adverse effects have been eliminated and measures implemented to prevent recurrence.

43 C.F.R. § 8341.2(a) (*emphasis added*). The BLM's authority to restrict land uses under these regulations is independent of its authority to amend or revise RMPs under FLPMA and 43 C.F.R. Part 1600. These regulations simply enforce FLPMA's mandate that the BLM "shall by regulation or otherwise, take any action necessary to prevent unnecessary or undue degradation of the lands." 43 U.S.C. § 1732(b).

Furthermore, the Administrative Record ("AR") is replete with evidence of various real and potential adverse effects supporting the BLM's issuance of the New Order: ORV use has already caused or will cause (1) harm to livestock grazing through the cutting of fences, the opening of gates, and the harassment of livestock;[2] (2) increased

---

1. USA–All states that although it is reluctant to challenge a regulation that on its face if used properly by the agency can help everyone, there is conflict within the governing statutes and the court may be compelled to strike the regulation. Tr.12, In 3–10.

2. AR 00839–00859.

risk to soils susceptible to erosion if exposed by ORV use and trail creation;[3] (3) destroyed vegetation in western Box Elder County, increased bare areas that are vulnerable to colonization by noxious and invasive weeds, as well as trail proliferation that removes vegetation and increasing soil erosion;[4] (4) considerable adverse effects on wildlife;[5] and (5) diminished visual appeal of the desert landscape.[6]

The court is satisfied that the defendants took the required "hard look" at potential environmental consequences of its decision under NEPA and that the New Order was not arbitrary or capricious under the regulations.

For the reasons discussed above,

IT IS ORDERED that all of the causes of action of USA–All's Supplemental Amended Complaint are DISMISSED with prejudice.

Let judgment be entered accordingly.

---

3. AR 00840–00885.

4. AR 00830–00860, 00918–22.

5. AR 00841–00861.

6. AR 00840–00845.